The next case on the calendar is Gentes v. Osten and Town of Sprague. And I see we have both sides are on Zoom. Are you able to hear me okay, Mr. Stegman? Yes, Your Honor. Can you hear me okay? Yes, I can. Can you hear me as well, Your Honor? Perfectly. Thank you. I see Mr. Stegman, you have reserved three minutes for rebuttal and you can begin whenever you're ready. Thank you, Your Honor. My name is Todd Stegman. I'm an attorney representing Robert Gentes in connection with this appeal. We claim that this court should reverse the district court's decision. I'm getting a lot of feedback. Is that coming through on your end as well? No. No, but we'll see if we can figure out what's going on. Okay, I'll continue. This court should reverse the district court's decision, staying this case pursuant to Colorado River as the district court abused its discretion in entering that order. I'm going to start with the issue of whether this federal court case is parallel to the state court case. I'm going to reference the Rule 28J letter that I filed yesterday afternoon. Have Your Honors received that letter that you filed? Yes, we have. Okay, very good. In that case, we brought to this court's attention the decision in Mokry v. Bergstein. In that case, this court held that Colorado River was not applicable because the predicate issue of whether the federal court case and the state court case were parallel was not satisfied. And the reasoning in Mokry is fully applicable here as well. Mokry is a little bit different, isn't it? In Mokry, neither court could ultimately—well, in Mokry, the state court couldn't ultimately decide ownership to the property because Mokry wasn't there. And all that was going on in this—well, not all. At least the parties didn't think so. But Mokry, the Connecticut action was a divorce action, and it was going to litigate the issue as to who owned the Jackson Pollock painting. But relief in the Connecticut action wouldn't decide or extinguish Mr. Mokry's claim, would it? That's correct. Let me ask you this. If your client loses in state court and the town were to persevere, find that he breached his fiduciary duty, breached his contract, and was responsible for the budget shortfall, what happens to his First Amendment claim, his whistleblower claim? The First Amendment claim would still proceed. Why does it still proceed? Because if he's found to have been the cause of the budget shortfall, then his blowing the whistle on the first select woman, Ms. O'Senn, then isn't really that. It's just trying to shift blame away from himself. Isn't he stuck with some findings of fact that he won't be able to escape offensive collateral estoppel in federal court? Well, I think, Your Honor, that assumes certain things about how the state court action would resolve and on what issues it would resolve. I think that there are ways that the state court action could resolve that would not present any collateral estoppel issues. For instance, you know, one of the statutory claim that the town was asserted against Mr. Gentis appears to be just like a strict viability claim. There's another claim in the state court action that's a professional negligence claim. But even assuming that there's an adverse judgment in the state court action against Mr. Gentis, that would not preclude him dispositively from proceeding with the First Amendment claim. You have a procedural due process claim, and that would be completely unaffected by the state. Even if your client was – every issue in the state was ruled against him, he could still claim that there was a lack of procedure, right? So there's a procedural due process claim, but if – I may, Your Honor, get back to the First Amendment claim that was presented in the prior question. So as we walk through, and I believe we did this both in our principle brief and in the reply brief, you know, the elements of the First Amendment retaliation claim would not be dispositively adjudicated against Mr. Gentis regardless of what the finding was in the state court case. If you walk through the elements of the First Amendment retaliation claim, he would have to show that he engaged in a speech on a matter of public concern. That does not require truth or falsity. It's just, you know, whether you're speaking on a matter of public concern. Then he would have to establish that Defendant Austin acted with a retaliatory motive. And as this court and the Supreme Court has made clear, the issue in a retaliation case or a discrimination case – But there could be – Mr. Steigman, there could be issues – just to go to Judge Wesley's point – there could be issues or elements in connection with the state cause of action that would collaterally stop your client from raising those same issues in the federal case with respect to one or more of his claims. Isn't – I mean that's a fact, right? If certain findings are made in connection with those claims, you can't relitigate those findings in connection with the federal claims to the extent that there is overlap, correct? I acknowledge the existence of collateral estoppel, and – So there would not be – the district court was worried about potentially inconsistency, inconsistent verdicts. But because of collateral estoppel, and your client is obviously a party to both proceedings, there wouldn't be an inconsistency with respect to any claims that overlapped. Where there was issues that were collaterally stopped would fully apply either way you went. If somehow the federal action went ahead of the state action, there would be collateral estoppel on those issues of the state and vice versa, correct? That is correct, Your Honor. You stole my thunder a little bit, and I was going to reference this court's decision – I believe it's in the Woodford case – that we cited in our briefing. And Woodford explained that Colorado River extension is applicable in cases where preclusion doctrines such as collateral estoppel are inadequate to protect against such concerns. And so obviously, as the attorney for Mr. Gentis, we believe he's going to prevail in the state court action. But if that doesn't happen, there are existing legal doctrines that allow parties in the federal court to look at how the state court resolved and what findings of that were made, and collateral estoppel can be applied. Mr. Steinman, just for a point of information, what's the status of your motion in front of the state court? You made it back in June, I think, of 2021. Have you heard from the state court yet? Just to clarify, Your Honor, I'm not representing Mr. Gentis in the state court action. He has separate counsel. But I did check the docket yesterday, and the motion for summary judgment appears from the docket to be still pending. There's a statute or a rule in Connecticut Superior Court that requires the Superior Court judges to render decisions within 120 days of argument on motions like the summary judgment motion. And there was a notation on the docket that the parties had waived compliance with that 120-day rule. And so I believe that it was argued earlier this year before the Superior Court, but the parties are, the town and Mr. Gentis are still waiting for a decision from the Superior Court judge on that. Okay. I suspected that. All right. Thank you, Mr. Steinman. You reserved your three minutes for rebuttal. We'll hear from Mr. Talbert. Good morning, Your Honors. May it please the court, my name is Jim Talbert, and I represent the defendant appellee, Town of Sprague, Connecticut. Co-defendant appellee Catherine Austin is represented by attorney Catherine Rule, who is also present, but I'll conduct the argument. The district court's order staying this lawsuit without prejudice to reopening, depending on the outcome of the related state court proceeding, should be affirmed for the following reasons. First, the district court retained jurisdiction and did not dismiss the case on the merits, but rather temporarily stayed the case primarily to avoid the risk of conflicting judgments that Your Honors have just noted. What distinguishes this case, the underlying district court action, from every other one of the decisions cited by the appellant here is that in this case, almost all of the plaintiff's federal claims are premised upon their theory that the state court lawsuit is baseless, vexatious, without foundation. If the court were to go through the counts of the federal action, the first count, for example, equal protection, selective enforcement, is premised specifically on the claim that the town brought a baseless lawsuit. The same holds true to the second count, First Amendment retaliation. The third count, procedural due process. The fourth count, substantive due process. Let me stop you on the procedural due process. I guess I don't understand how any of the litigation in the state could possibly preclude a procedural due process claim. Everything you say about Mr. Gentis in the state court action might be right, but he could still have not gotten due process in connection with the actions taken against him, right? Theoretically, Judge Bianco, but nonetheless, that procedural due process claim at JA 048 of the joint appendix is premised upon what the plaintiff, Mr. Gentis, describes as a vexatious lawsuit. No, but that's not it. He could describe it that way, but it's not an element of a procedural due process claim to show whether it's vexatious or not, right? It could, even if it's a finding that it was not vexatious, it still may be that the town did not give him, or Ms. Alston did not give him due process, right? Procedural due process. Without conceding anything, because it's theoretically possible, Your Honor, that- That abstention did not apply. Wasn't that your position in the district court? Yes, and I'll concede we were obviously incorrect. We were focused on the prior pending action doctrine, Your Honor, but- Well, let me ask you this. First of all, the district court only looked at two factors, really, to determine abstention applied, right? And your argument about the stay versus dismissal, if it's wrong, it's wrong. It doesn't matter that there was not a dismissal. The stay would be wrong because the action would be stopped. So I don't know that you can rely on the fact that there was a stay versus dismissal, but the district court only looked at two factors, right? Well, the district court analyzed closely two factors, but as the Supreme Court cautioned in Moses Cone, the decision whether to dismiss a federal action because of parallel state court litigation doesn't rest on a mechanical checklist, Your Honor, but on a careful balancing. I know, but the district court didn't even go through any of the other factors. The district court only went through two and then had one sentence about all the other factors saying none of them favor proceeding, right? That is correct, Your Honor, but unlike the other decisions that the appellant relies upon where district courts totally ignored the concept that the district court should err on the side of accepting jurisdiction, this court issued a 28-page, very detailed ruling that was quite thoughtful and put primary- A lot of it dealt, like the 26 of the pages dealt with, or many of them dealt with the prior action doctrine that you were relying on and saying why it didn't apply. But even on the statement that none of the other ones weigh against abstention, wasn't that incorrect? I think, again, I think you can see this, that two of the factors are neutral. But we have said if a factor is neutral because of the presumption that the federal cases should be litigated and shouldn't be stayed, that that weighs against abstention if they're facially neutral, right? There are factors that weigh against abstention, but more importantly, Your Honor, the fact that which the district court relied on heavily is that the state court action had been filed almost a year and a half before this case. There had been substantial discovery. In fact, it's a matter of public record in the state court case that there were some 19,000 documents produced by Mr. Gentis in that case. And- I know, but Colorado abstention is a very narrow, exceptional doctrine. Just because the state case is ahead of the federal case is not going to be sufficient for there to be justification for a stay. That's not going to be enough. Two of the factors were neutral, which weigh against abstention. And then two other factors, which the district court didn't analyze at all, whether the federal law provides the rule of decision. Certainly in the federal case, because there's constitutional claims, federal law applies. So that weighs against abstention. And whether the state procedures are adequate to protect his federal rights. Federal rights aren't being litigated. It's not like he brought counterclaims. If he had brought counterclaims in the state implicating federal law, then that might come out differently. But here, he hasn't served any claims in the federal court. So you can correct me if I'm wrong. The way I look at it, the neutral ones weigh against. That's two weigh against. And two other ones affirmatively weigh against because they're both in his favor. But most importantly, Judge Bianco, if the town prevails in that state court action, it eviscerates and almost entirely guts all of these federal claims. To continue with the claims, there's a Monell claim that specifically incorporates the first four counties. Why doesn't collateral estoppel fully protect your claim? Mr. Gentis is a party in that proceeding. Any findings that are made with respect to his mishandling of the money that are against him in state court, if in fact what you're saying is true, you could walk into federal court and argue collateral estoppel and get most, if not all, the constitutional claims dismissed on summary judgment. Thank you, Judge Bianco. That is precisely the point. That's why it made all the sense in the world and still does to allow that state court case to be resolved. No, what we said in Wolford is the opposite, that that fully protects on inconsistency of outcomes. That when collateral estoppel applies, that you don't have to abstain in those situations because there's not going to be any inconsistency. Because they're going to have full effect to the extent necessary in the federal litigation. But if we had the federal case jump ahead of the state case, it would be logistically impossible. Well, the same thing would apply. Then collateral estoppel would apply in the state if somehow that happened, which I think is doubtful. If there were any types of findings in the federal case that related to the mismanagement of the money, you could apply them there. Can you give me a case where we have found where there are federal constitutional claims asserted in federal court that we should apply, we should abstain in favor of a purely state case with only state law claims in it? Give me any decision where we have done that. I will acknowledge, Your Honor, as the district court noted, that our research did not disclose any such cases. But this is one of those cases where there are exceptional circumstances that justify the district court temporarily in the exercise of wise judicial administration to pause the federal case, the last state case to be resolved. Once you have – I gave your opponent a hard time about the fact that there were certain claims that he'd face issue preclusion if he loses – if his co-counsel or the fellow handling the – whoever it is handling the state proceeding loses, if Geddes loses in state court. But wouldn't some – following up on Judge Bianco's questions, some of that could be litigated in Judge Bryant's court perhaps maybe more efficiently. It seems like it's taking an awful long time to get an answer on a motion for summary judgment brought by the defendant in the state court. Won't some of the issues overlap and could – what precludes them from being litigated effectively in federal court? Well, also for the record, my firm and I are not involved in the state court litigation. But, yes, there could be overlap, and that is all the more reason why I think the court, Judge Bryant, properly exercised discretion to not have them going down the track at the same time and to just in the exercise of administration, a proper administration of scarce judicial resources – Mr. Talberg, let me just read you what we – let me just read you what we said in Woodford and tell me what I'm missing. We said the primary context in which we have affirmed Colorado River abstention in order to avoid piecemeal adjudication has involved lawsuits that posed a risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel. And so this – your primary argument and the primary reliance of the district court on this piecemeal adjudication and potential inconsistent outcomes is completely remedied here by collateral estoppel and res judicata, right? With all due respect, I vehemently disagree, Judge Bianco. Woodford is entirely distinguishable because that was a discrimination case in which plaintiffs specifically volunteered to withdraw their companion state law claims. That's not the case here. All right. So it's simply inapplicable. In closing, my time has come to an end. May I just summarize, Your Honor? You have 30 seconds. Yes. In closing, the district court properly exercised its discretion in upholding a well-reasoned decision to stay this case pending resolution of the rape-related state court litigation. If there are no further questions, we'll rely on our brief, and we respectfully request that the district court's decision be affirmed. Thank you, Your Honor. Thank you. All right, Mr. Stegman, you have three minutes in rebuttal. Thank you, Your Honor. Before I proceed, are there any questions from the court that Your Honors would like me to address before I raise other issues? Why don't you just start, and we'll see how it goes. Okay. Okay. So I just want to respond to opposing counsel's reference and invocation of the district court's discretion. The district court's discretion is limited by the requirements of the Colorado River Doctrine. If the requirements of the Colorado River Doctrine are not satisfied, and if narrow and exceptional circumstances test, then the district court has no discretion to unilaterally abstain from adjudicating claims over which it has subject matter jurisdiction, including federal constitutional claims that are properly before the court. And I do want to refer back to the Mokry decision. Although I recognize that there are factual differences between this case and Mokry, the way that the issue of whether the cases are parallel in the structure of that analysis, as it was explained in Mokry, does result in the conclusion here that these cases are not parallel. The issues are different. There's different parties. There's different remedies. In this case, Mr. Gentis has asserted eight claims in federal court, five federal constitutional claims, three state law claims. As Your Honor noted, none of those claims are asserted in the state court case. So obviously different issues and different claims. Mr. Gentis cannot obtain any of the remedies in the state court case that he's seeking in the federal court case. So there's obviously different remedies available, just like there was in Mokry. And there's different parties. All of the plaintiff's claims in the federal court case are essentially against Defendant Austin. The only claim against the town is the Monell claim, which just seeks to hold the town accountable for Austin's conduct. And Austin is not even a party to the state court case. So based on the analysis and structure of the Mokry opinion, I do not believe these cases are parallel. The other factor that the court relied upon in Mokry to hold that Colorado River was not satisfied was that the state court case would not render the federal court case moot. That's also the case here. Regardless of the outcome of the state court case, it will not render and conclusively resolve all of the claims and issues in the federal court case. There are just too many differences. And we've explained some of those differences in our principle brief and in the reply brief. I do want to return to a third factor, the piecemeal litigation factor the district court focused on in its opinion. And I urge this court to follow the framing of that issue from its prior decision in Bethlehem contracting. Allowing this federal court action to proceed does not necessarily create piecemeal litigation that might be avoided by staying in the case. That was true in Bethlehem contracting. It's also true here. This situation does not present any scenario that cannot be handled through collateral estoppel, as we've established. And staying in the case does not avoid piecemeal litigation. It just causes delay. In closing, I'd just like to refer this court to the Supreme Court's decision in Moses H. Cohn. The Supreme Court said, if there's any substantial doubt the state court case will be an adequate vehicle for a complete and prompt resolution of the issues, it would be a serious abuse of discretion to grant it's day. That's on 460 U.S. at page 28. Based on that reasoning, it was a serious abuse of discretion here for the district court judge to stay in the case. With that, I'll rest and rely on over to you. All right. Thank you, Mr. Steigman. Thank you, Mr. Tallberg. We'll reserve decision. Have a good day. Thank you, Your Honor. Okay. The final case being argued today is Edwards versus McMillan Capital LLC. McMillan Capital is on submission, and we have Mr. Edwards on Zoom. Can you hear me okay, Mr. Edwards? I can. Can you hear me? It's a little bit low. I don't know if we can turn up the volume here. Just wait one second. All right. I think we're good. Go ahead, Mr. Edwards. You have five minutes. Yes. We were here before on appeal. The district court, actually, the attorney at the district court, on the grounds of res judicata, collateral escapos, felicitative claims, and being time barred. And they also said that I didn't have the right to use the statement of passage. Judge, on the Hill that the district court granted the first motion to the district, based upon group of felonies, this court of appeals for the Second Circuit remanded and reversed that decision, and sent it back for further proceedings. The appellee, then, on a second motion to dismiss, for the same reason, the grounds, rather, other than group of felonies. And Judge, on the Hill, denied it based upon res judicata, collateral escapos, and my inability to use the statement of passage, but he granted it on comfort and felicitative stated claims. And we're here today because I feel that it's not, I've alleged that it's not beyond a reasonable doubt that I can prove any of the facts that I've alleged. And, actually, Judge, on the Hill, actually agrees with that. He says, in his ruling, Judge, on the Hill, says that it's not, to be specific, he says, Judge, on the Hill, in his ruling, says, because the Second Circuit has not articulated a standard for determining whether a loan is made for business purpose, courts determining whether it still applies to a particular transaction must conduct a fact-specific inquiry to determine the primary purpose of the loan. So, Judge, on the Hill, is acknowledging that the heart of the dispute is the primary purpose of the loan. I have alleged that this is a loan to buy my personal residence. Fannie Mae sold this house only to potential buyers who would own or occupy the home for at least one year. And I approached the appellee for a loan. I sent a Fannie Mae contract to the appellee, which said that I had to own or occupy the docket, the home, for at least one year as my primary residence. I had to sign a writer to the contract stating that I intended to own or occupy the home as my primary residence. I sent all the documents to McMillan. His closing attorney sent an email to me saying, Hey, Mr. Edwards, do you realize you have to own or occupy this house? I said, well, that's the purpose of trying to buy my home. And the answer is yes. He then sent an approval letter approving my loan request to purchase my home and make repairs to the home. And in his loan commitment letter, he indicated also, consistent with the Fannie Mae contract, that I had to own or occupy the home for at least one year. And based upon, I know we're not here on the merits today, but based upon the Consumer Reverse Reserve Board, which actually interprets Miller, and it's called Regulation C, they tell us, they give us guidance on what is a consumer loan and what's a commercial loan. And a consumer loan is a loan where the proceeds are used primarily for personal, household, and family purposes. And a primary residence is for personal, household, and family purposes. What McMillan did was, his closing attorney actually offered to represent myself and McMillan at closing. Offered dual representation. I accepted it. I paid for him to represent my interest. And at closing, what McMillan did was, he actually put a label on, in the loan and the mortgage, that this is a commercial transaction. And his motive to do that was, he wanted to charge 25% interest, 30% default interest, make a loan of one year loan, and actually make a balloon payment in one year for me to pay principal and interest. And that's not a, I'm alleging, that's not a consumer loan. Mr. Edwards, you just have one minute left. And I just wanted you, the district court, and I understand your points with respect to the merits, but the district court found that at least the TTIWA claims and the CUPTA claim were untimely. That was a timeliness issue there. Do you want to just spend a few seconds on why that's not correct? Yeah, that's incorrect. That's exactly right. Sorry to be so long with you. That's okay. The open-ended transaction, which I'm alleging this is, the discovery rule applies. And I could not actually invoke discovery after I have to plead extraordinary circumstances. And I plead attorney misconduct. And attorney misconduct in case law that I have is extraordinary circumstances. I had no idea. I acted with diligence. And that attorney failed to use normal, reasonable competence of an attorney and tell me that this was an illegal contract. I didn't discover this until actually the same attorney, Ed McMillan, threatened me with foreclosure in November of 2013. Then I contacted another attorney. The other attorney brought my attention to the violation. So I discovered it in 2013, December. And Judge Fondejo says this is a three-year statute of limitations. So I had until three years from December 2013 to file. And I filed in June 15th. At the time he filed. In addition, equitable tolling. Just very quickly. I'll give you 30 seconds. Go ahead. Okay. Yeah. The thief who sells the vase, a regular worthless mail vase as a empty vase, actually his concealment, his fraud is self-concealing. And case law says if the fraud is self-concealing, as long as I act with due diligence, and I contacted another attorney later on and found it out, the period is full until I discover it. So I believe Filler, Cutmer, and all of the claims that I have are timely filed. The Filler and Cutmer are timely filed. And the other three causes of action, negative, negativistic, emotional distress, breach of the covenant of good faith, all state of claim. And the reason is, in closing, Judge Fondejo, this centers the whole, all of my causes of action, centers on whether the loan is commercial or consumer. If the loan is consumer, I'm alleging every single statute that I allegedly violated, it's possible, very likely, that the court could agree with me. Because, in fact, those statutes apply to residential loans. In Bentley, she claimed the same thing, but she had a closed-end loan where the statutes didn't apply. So there's no possible way to prove it. All right. All right, Mr. Edwards. I think we understand your arguments. We appreciate you presenting them today. All right, we're going to reserve decision. Have a good day. All right, that completes the business of the court today. With thanks to Ms. Beard, I'll ask that she adjourn the court. Thank you.